OPINION
This appeal is taken from a final judgment of the Trumbull County Court of Common Pleas. Appellant, Monroe Guaranty Insurance Company, appeals from the trial court's grant of summary judgment in favor of appellee, The Hartford Steam Boiler Inspection and Insurance Company, in an action instituted by the former against the latter for indemnification.
On June 14, 1995, lightning struck a transformer which provided electricity to an asphalt plant in Mineral Ridge, Ohio. The plant was owned and operated by Hardrives Paving and Construction Company ("Hardrives Paving"). The lightning strike damaged the transformer, thereby disrupting the flow of electricity to the plant. When power was restored, a surge of electricity pulsated through the circuitry controlling the boilers and machinery at the plant. This resulted in significant physical damage to the circuitry.
Hardrives Paving had two insurance policies in effect at the time of this occurrence. The first was a blanket commercial insurance policy with Monroe Guaranty Insurance Company ("Monroe Guaranty"). The primary component of this policy was commercial property coverage. Such coverage included a "Building and Personal Property Coverage Form." Pursuant to this form, the scope of coverage was defined as Monroe Guaranty's obligation to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." As used in this coverage part, "Covered Property" was defined to encompass buildings, including any permanently installed machinery and equipment that was located in such buildings.
The causes of loss covered by Monroe Guaranty were addressed in a special form appended to the primary property policy. In this form, lightning was included within a list of "Specified Causes of Loss."
The second relevant policy maintained by Hardrives Paving was one issued by The Hartford Steam Boiler Inspection and Insurance Company ("Hartford Steam Boiler"). This was a boiler and machinery policy which was also in force on the day that the lightning struck the transformer servicing the asphalt plant.
Under the terms of its policy, Hartford Steam Boiler agreed to "pay for direct damage to Covered Property caused by a Covered Cause of Loss." The Hartford Steam Boiler policy contained a list of exclusions, including a so-called "lightning exclusion." Pursuant to this exception, Hartford Steam Boiler stated that it would not pay for loss caused by or resulting from "[l]ightning, if coverage for that cause of loss is provided by another policy of insurance or coverage part you have."
Following the lightning strike on June 14, 1995, Hardrives Paving filed a claim for property damage with both Hartford Steam Boiler and Monroe Guaranty. Hartford Steam Boiler denied the claim on the basis of the lightning exclusion in its policy. Monroe Guaranty paid $12,981 to Hardrives Paving on the claim.
Although it paid the claim, Monroe Guaranty believed that Hartford Steam Boiler was primarily liable for the damage to the machine circuitry at the asphalt plant. Consequently, on May 12, 1997, Monroe Guaranty filed a civil action against Hartford Steam Boiler in the trial court seeking indemnification of the amount that it had previously paid to Hardrives Paving for property damage. Hartford Steam Boiler filed an answer in which it denied any obligation to indemnify Monroe Guaranty.
Monroe Guaranty attached a copy of its policy to the complaint, while Hartford Steam Boiler appended a copy of its boiler and machinery policy to the answer. Thus, copies of both policies were before the trial court. Hartford Steam Boiler subsequently filed a motion for summary judgment. In response, Monroe Guaranty filed a brief in opposition and a cross-motion for summary judgment based on the pleadings and the attached insurance policies. The trial court heard oral arguments on the motions.
On July 6, 1998, the trial court issued its ruling on the matter. It concluded that Hartford Steam Boiler was entitled to summary judgment against Monroe Guaranty on the ground that the latter provided primary coverage for lightning damage, whereas the Hartford Steam Boiler policy contained an express lightning exclusion which was operative in light of the coverage afforded by Monroe Guaranty.
From this judgment, Monroe Guaranty filed a timely notice of appeal with this court. It now asserts the following assignment of error:
 "The trial court erred to the prejudice of the of [sic] Appellant/Plaintiff Monroe Guaranty Ins. Co. in granting Appellee/Defendant's motion for summary judgment and denying Appellant/Plaintiff's motion for summary judgment."
In its lone assignment of error, Monroe Guaranty suggests that the trial court erred by granting summary judgment for Hartford Steam Boiler on the question of which insurer was primarily liable for the loss associated with the lightning strike at the asphalt plant operated by Hardrives Paving. Civ.R. 56(C) sets forth the standard for addressing a motion for summary judgment. In order to prevail, the moving party must establish that: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmovant. Civ.R. 56(C); Leibreich v. A.J. Refrigeration,Inc. (1993), 67 Ohio St.3d 266, 268; Davis v. LoopcoIndustries, Inc. (1993), 66 Ohio St.3d 64, 65-66;Lindquist v. Dairy Mart/Convenience Stores of Ohio, Inc.
(Nov. 14, 1997), Ashtabula App. No. 97-A-0015, unreported, at 6, 1997 Ohio App. LEXIS 5124.
An appellate court applies a de novo standard of review when determining whether a trial court properly granted summary judgment. McCallister v. Portsmouth (1996), 109 Ohio App.3d 807,810; Burkholder v. Straughn (June 26, 1998), Trumbull App. No. 97-T-0146, unreported, at 2, 1998 WL 553623.
Monroe Guaranty proposes that the trial court's grant of summary judgment on behalf of Hartford Steam Boiler was incorrect as a matter of law. The primary argument advanced by Monroe Guaranty is that the trial court improperly gave effect to the lightning exclusion in the Hartford Steam Boiler policy.
In support of this position, Monroe Guaranty invokes the concept of excess and escape clauses. An excess clause in an insurance policy purports to extend coverage to the insured only to the extent that such coverage is excess over other collectible insurance. The supplemental protection offered by an excess provision is not triggered until all other coverage has been exhausted. An escape clause provides that coverage is afforded to the insured only if no other applicable coverage is available. Because the insurer may avoid liability under its terms, an escape clause is also commonly referred to as a nonliability clause.
In State Farm Mut. Auto. Ins. Co. v. Home Indemn. Ins. Co. (1970), 23 Ohio St.2d 45, the Supreme Court of Ohio addressed a conflict between an excess clause and an escape clause in competing automobile insurance policies. The case involved an automobile accident in which the driver was operating another car with the permission of its owner. State Farm insured the driver, while Home Indemnity insured the owner of the borrowed car. The State Farm policy contained an excess clause, but an escape provision was subsumed within the Home Indemnity policy.
In resolving the question of liability, the Supreme Court announced the following holding:
 "Where an insurance policy insures a loss `only if no other valid and collectible automobile liability insurance, either primary or excess * * * is available,' and another insurance policy insures the same loss only as to the `excess over other collectible insurance,' the latter provision will be given effect; thus, the former policy will be held to furnish the insurance for the loss." State Farm, 23 Ohio St.2d at syllabus.
Monroe Guaranty cites State Farm as establishing the rule of law in Ohio that an excess clause will be given effect when in conflict with an escape clause. This is the basis of Monroe Guaranty's primary argument as to why the trial court erred in granting summary judgment for Hartford Steam Boiler.
The Monroe Guaranty policy contains an excess clause. It reads in part:
"G. OTHER INSURANCE
 "2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not."
The boiler and machinery insurance policy that Hartford Steam Boiler issued to Hardrives Paving also contains an excess clause. The wording of this excess clause is virtually identical to its counterpart in the Monroe Guaranty policy.
Monroe Guaranty maintains that its excess clause should be given effect over the lightning exclusion in the Hartford Steam Boiler policy because the exclusion is an escape clause. Based on the holding in State Farm, Monroe Guaranty contends that the trial court erred by finding the lightning exclusion to be operative. From Monroe Guaranty's perspective, the trial court should have given precedence to its excess clause, while concomitantly denying effect to Hartford Steam Boiler's escape clause as embodied by the lightning exclusion. This would have resulted in Hartford Steam Boiler being primarily liable for the property damage caused by the lightning strike.
As support for this, Monroe Guaranty cites Utica Mut. Ins. Co.v. Travelers Ins. Co. (1995), 624 N.Y.S.2d 485, 213 A.2d 983. InUtica Mutual, a school district had a policy of insurance covering buildings and personal property with Utica Mutual Insurance Company and a policy of insurance covering boilers and machinery with Travelers Insurance Company. In July 1991, lightning struck and damaged an electrical transformer and other school property. The school district submitted a claim under each policy.
Travelers disclaimed liability based upon an exclusion in its policy for losses caused by lightning "if coverage for that cause of loss is provided by another policy of insurance you have." Utica Mutual settled the claim and then commenced a declaratory judgment action in which it sought a declaration that Travelers was primarily liable for the loss. Both parties moved for summary judgment. The trial court granted Travelers' motion and declared that the Utica Mutual policy provided primary coverage for the lightning damage.
On appeal, the appellate court reversed while citing the rule that a nonliability clause is not given effect when it conflicts with an excess clause. The Utica Mutual policy contained an excess clause, and the court viewed the lightning exclusion in the Travelers policy as a nonliability clause. Therefore, the appellate court gave effect to the excess clause over the nonliability clause, thereby holding Travelers primarily liable for the loss.
Monroe Guaranty urges this court to reverse the decision of the trial court pursuant to State Farm and Utica Mutual. We decline to do so.
As an initial matter, we agree with Hartford Steam Boiler that the decision in State Farm can be distinguished. In State Farm, it was "conceded that the driver would be covered under each policy were it not for the `other insurance' language contained in each." State Farm, 23 Ohio St.2d at 46. Such is not the case in the instant matter. Monroe Guaranty apparently concedes that its policy covered lightning as a specified cause of loss. By contrast, the Hartford Steam Boiler policy expressly excluded lightning as a valid cause of loss to the extent that another insurance policy provided coverage for that particular peril. If the "other insurance" type language is removed from the lightning exclusion, loss resulting from that particular phenomenon (i.e., lightning) would still be excluded under the Hartford Steam Boiler policy.
We recognize that the general rule as promulgated by the Supreme Court in State Farm is that an excess clause will be given effect when it conflicts with an escape clause. The scenario inState Farm, however, only encompassed one excess clause and one escape clause. In the case at bar, both the Monroe Guaranty and Hartford Steam Boiler policies contained excess clauses wherein the companies attempted to disclaim primary liability when "there is other insurance covering the same loss or damage[.]"
Moreover, the State Farm decision was rendered in the context of automobile liability insurance, not property insurance. As stated by Judge Leach many years ago in Continental Cas. Co. v.Buckeye Union Cas. Co. (C.P. 1957), 75 Ohio Law Abs. 79, 84-85:
 "Before attempting to analyze the holdings of other courts in similar or somewhat similar cases of `double insurance,' we wish to point out that we believe that there is, or perhaps when stated more accurately, that there should be, a totally different approach by the courts in their construction of `double insurance' questions in those cases of property insurance as contrasted with cases of liability insurance. In the former, public policy would seem to dictate a construction against `double coverage' as eliminating possibilities of over-valuation, etc. In the latter, we see no such public policy."
Since lightning was a specified cause of loss in the Monroe Guaranty policy, the lightning exclusion in the Hartford Steam Boiler policy became operative. Under this view, Hardrives Paving purchased primary protection from Monroe Guaranty for lightning as a cause of loss. Based on our reading of the two insurance policies, we conclude that Monroe Guaranty was primarily liable for the loss because it afforded coverage for lightning as a cause of loss.
Besides arguing that Hartford Steam Boiler should have been primarily liable, Monroe Guaranty presents an alternative position, to wit: that Hartford Steam Boiler should have borne a pro rata share of the loss. This argument is based on the decision of the Supreme Court of Ohio in Buckeye Union Ins. Co. v.State Auto. Mut. Ins. Co. (1977), 49 Ohio St.2d 213.
In the syllabus of Buckeye Union, the court held:
 "Where two insurance policies cover the same risk and both provide that their liability with regard to that risk shall be excess insurance over other valid, collectible insurance, the two insurers become liable in proportion to the amount of insurance provided by their respective policies."
As described previously, the Monroe Guaranty and Hartford Steam Boiler policies contained almost identical excess clauses. If the two excess clauses are viewed as being in conflict, then Monroe Guaranty asserts that it should have only been proportionally liable for the loss pursuant to Buckeye Union.
The problem with Monroe Guaranty's analysis is that it ignores the effect of the lightning exclusion in the Hartford Steam Boiler policy. This is not a situation where the two insurance policies "cover the same risk and both provide that their liability with regard to that risk shall be excess insurance[.]" Rather, the Hartford Steam Boiler policy was specifically drafted to exclude lightning as a covered cause of loss when that peril was covered by another insurance policy maintained by Hardrives Paving. Thus, even if the two excess clauses are viewed as canceling each other out, the Monroe Guaranty policy covered lightning as a cause of loss, whereas the Hartford Steam Boiler policy did not given the operation of the lightning exclusion. For this reason, we conclude that Monroe Guaranty remained primarily liable for the loss, notwithstanding the existence of competing excess clauses and the holding in Buckeye Union.
The trial court correctly held that Monroe Guaranty's policy provided primary coverage and that the lightning exclusion in the Hartford Steam Boiler policy was effective. The grant of summary judgment for Hartford Steam Boiler was appropriate.
Based on the foregoing analysis, the assignment of error is not well-taken. Accordingly, the judgment of the trial court is affirmed.
 __________________________________________________________ JUDGE JOSEPH E. O'NEILL, Ret., Seventh Appellate District, sitting by assignment.
FORD, P.J., O'NEILL, J., concur.