OPINION
{¶ 1} Plaintiff-appellant, Ansel Wayne Mitchell, appeals from the judgment of the Franklin County Court of Common Pleas that, in part, granted summary judgment in favor of defendant-appellee, Motorists Mutual Insurance Company ("Motorists"). For the following reasons, we affirm.
 {¶ 2} On May 12, 2002, Deanna Morrison and Mitchell, her passenger, were traveling southbound on U.S. Route 23 in Morrison's automobile. Scott Aller, who was traveling northbound on the same road, negligently drove his automobile across the centerline and collided with Morrison's automobile. Ultimately, four automobiles were involved in the accident.
 {¶ 3} As a result of the accident, Mitchell was severely injured. For treatment for his injuries, Mitchell incurred medical bills in the amount of $33,563.
 {¶ 4} At the time of the accident, Vision Group Insurance provided Aller with a liability bond with coverage limits of $12,500 per person and $25,000 per accident. Because multiple people were injured in the accident, Mitchell settled his negligence claim against Aller for only $4,800 — Mitchell's portion of the $25,000 per accident coverage limit.
 {¶ 5} Because his damages exceeded $4,800, Mitchell filed suit against Motorists and Halcyon Insurance Company ("Halcyon")[1] seeking underinsured motorists benefits. Mitchell sued Motorists because it provided Morrison with an automobile liability insurance policy that included underinsured motorists coverage. Mitchell sought a declaratory judgment that he was an insured under the Motorists policy as a passenger in a covered vehicle and that he was entitled to underinsured motorists coverage in the amount of $100,000, the policy per person coverage limit.
 {¶ 6} Mitchell added Halcyon as a defendant because Halcyon provided his cousin, Susan Tackett, with an automobile liability insurance policy that included underinsured motorists coverage. At the time of the accident, Mitchell resided with Tackett. Mitchell sought a declaratory judgment that he was an insured under the Halcyon policy as a family member of an insured and that he was entitled to underinsured motorists coverage in the amount of $12,500, the policy per person coverage limit.
 {¶ 7} On February 20, 2004, Motorists moved for summary judgment, arguing that Mitchell was not an insured for the purposes of the underinsured motorists coverage provided under Morrison's policy. In making this argument, Motorists relied upon the provision of its policy that defined an "insured" as a passenger "who is not a named insured or an insured family member for uninsured motorists coverage under another policy."[2] Motorists asserted that because Mitchell was an insured family member under the Halcyon policy, he was not an insured under the Motorists policy.
 {¶ 8} In response, Mitchell filed his own motion for summary judgment, in which he maintained he was entitled to coverage for his uncompensated damages under both the Motorists and Halcyon policies. In his motion, Mitchell asserted that the Motorists policy contained ambiguities that should be construed in his favor, thus making him an insured under that policy.
 {¶ 9} On April 1, 2004, the trial court issued a decision ruling upon Mitchell's and Motorists' motions for summary judgment. First, the trial court granted Mitchell's motion for summary judgment to the extent that it found that Mitchell was an insured family member under the Halcyon policy and held that he was entitled to underinsured motorists benefits in the amount of $12,500, less the $4,800 settlement Mitchell received from Aller. Second, the trial court denied Mitchell's motion for summary judgment as it related to the Motorists policy and granted Motorists' motion for summary judgment. In so ruling, the trial court agreed with Motorists' argument and determined that the Motorists policy excluded Mitchell from coverage because he was not an insured for purposes of underinsured motorists coverage.
 {¶ 10} On June 1, 2004, the trial court issued a judgment entry reflecting its April 1, 2004 decision. Mitchell now appeals from that judgment.
 {¶ 11} On appeal, Mitchell assigns the following errors:
1. The trial court erred in concluding that no ambiguity exists as a result of the "other insurance" clause in the Motorists' policy.
2. The trial court erred in finding that Motorists can define an "insured" in a manner that penalizes an injured party for having "other insurance" without violating Ohio Revised Code Section 3937.18.
3. The trial court erred in finding that the Motorists' policy does not contain an invalid escape clause.
 {¶ 12} Appellate review of summary judgment motions is de novo. Heltonv. Scioto Cty. Bd. Of Commrs. (1997), 123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates via pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence or written stipulations of fact that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v. State Emp.Relations Bd. (1997), 78 Ohio St.3d 181, 183.
 {¶ 13} By his first assignment of error, Mitchell argues that the trial court should have found that certain provisions of the Motorists policy were inconsistent and interpreted the resulting ambiguity in his favor. We disagree.
 {¶ 14} The uninsured/underinsured motorists coverage endorsement to the Motorists policy states that Motorists will pay compensatory damages that an insured is legally entitled to recover from an uninsured or underinsured motorist for injuries sustained by the insured in an accident. Section B of the endorsement defines an "insured" as:
1. You or any family member.
2. Any other person occupying your covered auto who is not a named insured or an insured family member for uninsured motorists coverage under another policy.
 {¶ 15} Mitchell contends that the definition of "insured" provided in Section B(2) conflicts with the "Other Insurance" provision contained in the endorsement, which reads:
If there is other applicable insurance available under one of more policies or provisions of coverage:
* * *
3. If the coverage under this policy is provided:
a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.
b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.
 {¶ 16} Mitchell argues that, on one hand, Section B(2) prevents a passenger who is an insured for uninsured/underinsured motorists coverage under another policy from receiving such coverage under the Motorists policy. On the other hand, the "Other Insurance" provision states that if uninsured/underinsured motorists coverage is available under another policy, Motorists will also provide such coverage, but will limit payment for any loss to its proportional share. Thus, Mitchell maintains, the effect of one provision is that a passenger insured by another policy will not have coverage under the Motorists policy, while the other provision presumes that a passenger insured by another policy will have coverage under the Motorists policy. Because any ambiguity in an insurance policy must be construed in favor of the insured,[3] Mitchell argues that we should disregard Section B(2) to the extent that it excludes passengers with other uninsured/underinsured motorists coverage from the definition of an "insured."
 {¶ 17} When the language in an insurance policy is unambiguous, a court must enforce the policy as written. Cincinnati Indemn. Co. v.Martin (1999), 85 Ohio St.3d 604, 607. A court must construe each insurance policy as a whole, so as to give effect to every part of the policy, and attempt to harmonize all the provisions rather than find conflict. State Auto. Ins. Co. v. Childress (Jan. 15, 1997), Hamilton App. No. C-960376; Stith v. Milwaukee Guardian Ins., Inc. (1988),44 Ohio App.3d 147, 148. No provision of an insurance policy should be disregarded as inconsistent with other provisions unless no other reasonable construction is possible. Karabin v. State Auto. Mut. Ins.Co. (1984), 10 Ohio St.3d 163, 167, quoting Travelers Indemn. Co. v.Reddick (1974), 37 Ohio St.2d 119, 121.
 {¶ 18} In the case at bar, we agree with Mitchell's interpretation of Section B(2) and the "Other Insurance" provision, but we disagree that these provisions conflict with one another. Morrison, the named insured, and her family members are all defined as "insureds" in Section B. Thus, when the "Other Insurance" provision contemplates that other uninsured/underinsured motorist coverage may be available to Motorists' insureds, it refers to other such coverage available to Morrison and her family members, not to a passenger insured under another policy. Given this reading of the policy, the "Other Insurance" provision does not presume, contrary to Section B(2), that a passenger who is an insured under another policy will also be entitled to uninsured/underinsured motorists coverage under the Motorists policy. Thus, because we can construe the Motorists policy provisions so that they are in accord with each other, the entire policy, including Section B(2), is enforceable.
 {¶ 19} Accordingly, we overrule Mitchell's first assignment of error.
 {¶ 20} By Mitchell's second assignment of error, he argues that R.C.3937.18 prohibits Motorists from "penalizing" him for being insured under another policy. Mitchell notes that the General Assembly initially mandated underinsured motorists coverage so that a person injured by a tortfeasor having extremely low liability coverage would receive at least the same amount of compensation that an insurance policy afforded to a person injured by a tortfeasor having no liability coverage. Clark,
supra, at 275. Thus, Mitchell reasons, just as the existence of liability coverage inadequate to fully compensate an injured person should not penalize that person, the existence of underinsured motorists coverage inadequate to fully compensate him should not penalize him. We disagree.
 {¶ 21} As Mitchell states, underinsured motorists coverage assures that an insured is compensated up to the amount of the uninsured/underinsured coverage limits no matter the amount of the tortfeasor's liability coverage. Consequently, pursuant to the underinsured motorists coverage included in the Halcyon policy, Mitchell was entitled to the coverage limit of $12,500 (less any amounts received from Aller) whether or not Aller was insured. However, nothing in the policy considerations behind underinsured motorists coverage or R.C. 3937.18
guarantees that Mitchell is entitled to underinsured motorists coverage when he is not insured under the policy containing the coverage. To the contrary, the applicable version R.C. 3937.18[4] allows insurers to include terms that preclude coverage for bodily injury or death "[w]hen the person actually suffering the bodily injury, sickness, disease, or death is not an insured under the policy." R.C. 3937.18(I)(5). Further, as R.C. 3937.18 does not mandate who must be an insured for purposes of underinsured motorists coverage, the parties to an insurance policy are free to draft their own restrictions regarding who is and is not an insured.
 {¶ 22} Here, Motorists utilized its ability to define who is an insured under the policy to exclude from that definition passengers who are insureds under other policies. Although Mitchell is unhappy with the result, i.e., that he is limited to collecting benefits only under his cousin's policy, no public policy or statute prohibits it or even militates against it.
 {¶ 23} Accordingly, we overrule Mitchell's second assignment of error.
 {¶ 24} By his third assignment of error, Mitchell argues that the Motorists policy's definition of an "insured" amounts to an invalid escape clause that, when paired with the excess clause in the Halcyon policy, is ineffective. We disagree.
 {¶ 25} Generally, insurance policies contain "other insurance" provisions that attempt to either vitiate or limit an insurer's liability for covering an insured's loss when another insurance policy also covers the insured. An "escape clause" declares that the insurer is not liable to cover an insured if there is other valid and collectible insurance covering the risk. 15 Couch, Insurance (3 Ed. 2004), Section 219:36. An "excess clause" contained in an "other insurance" provision purports to make an otherwise primary policy excess insurance should another primary policy cover the loss. Id., at Section 219:33.
 {¶ 26} In State Farm Mut. Auto. Ins. Co. v. Home Indemn. Ins. Co.
(1970), 23 Ohio St.2d 45, the Supreme Court of Ohio addressed a situation in which the injured insured was entitled to liability coverage under two different policies, one of which contained an escape clause and the other of which contained an excess clause. In such a situation, if the court gave both clauses full effect, the injured insured would not be covered by either because one insurer would "escape" covering the loss due to the existence of other collectible insurance, and the other insurer would also not cover the loss as the existence of the other collectible insurance would limit its coverage to excess insurance only. To resolve this dilemma, the court concluded that:
Where an insurance policy insures a loss "only if no other valid and collectible automobile liability insurance, either primary or excess * * * is available," and another insurance policy insures the same loss only as to the "excess over other collectible insurance," the latter provision will be given effect; thus, the former policy will be held to furnish the insurance for the loss.
Id., at syllabus. In other words, an escape clause is ineffective when the alternative policy contains an excess clause. Thus, the insurer with the policy containing the escape clause becomes the primary insurer, and the other insurer must provide excess coverage.
 {¶ 27} In the case at bar, Mitchell argues that Section B(2) amounts to an escape clause because it excuses Motorists from providing coverage to him on the basis that he is an insured under another policy. Further, Mitchell points out, the Halcyon policy contains an excess clause that states, "[a]ny insurance we provide shall be excess over any other uninsured or underinsured motorist coverage * * *." Accordingly, Mitchell asserts that pursuant to the State Farm decision, the trial court should have ordered Motorists to provide primary insurance and Halcyon to provide excess insurance.
 {¶ 28} Mitchell's argument is unavailing because the State Farm
decision has no applicability here. In State Farm, supra, at 46, both parties conceded that the injured party "would be covered under each policy were it not for the `other insurance' language contained in each." The conflict between the escape and excess clauses arose because insurance was "collectible" under both policies and that fact triggered the "other insurance" language in each policy that prevented the insured from collecting under either policy. Here, however, insurance was never "collectible" under the Motorists policy because Section B(2) precluded Mitchell from being an insured. Thus, the "other insurance" language in the Halcyon policy was never triggered by the existence of other underinsured motorist coverage, and the Halcyon policy never converted to excess insurance. Because Mitchell was never entitled to underinsured motorists coverage under the Motorists policy, Halcyon remained the primary insurer for Mitchell's loss.
 {¶ 29} Further, the holding of Progressive Max Ins. Co. v. Empire Fire Marine Ins. Co. (Aug. 7, 2001), Franklin App. No. 00AP-1361, does not alter the above conclusion. In Progressive Max, the policy containing the escape clause made liability coverage under the policy contingent upon whether the person seeking insurance was a "rentee" who had other insurance. If the "rentee" was not covered under other insurance or if the limits of the rentee's insurance were less than the policy's, the policy provided excess liability coverage. We held that such a provision was akin to the escape clause in State Farm because "[b]oth policies ultimately purport to provide coverage if no other automobile liability insurance applies." Progressive Max. Here, however, the Motorists policy does not provide coverage if no other insurance applies. Rather, if no other underinsured motorists coverage applies, a passenger would simply become an insured who is not necessarily entitled to coverage unless all other terms and conditions of the policy are fulfilled.
 {¶ 30} Further, if we were to apply the Progressive Max opinion here, we would limit the parties' ability to define who is an insured for underinsured motorists coverage. As we stated above, nothing in R.C.3937.18, which governs the permissible terms for underinsured/uninsured motorists coverage, restricts the parties' freedom to define who is and who is not an insured.
 {¶ 31} Accordingly, we overrule Mitchell's third assignment of error.
 {¶ 32} For the foregoing reasons, we overrule Mitchell's three assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Brown, P.J., and Bryant, J., concur.
[1] In Mitchell's initial complaint, he improperly designated Halcyon as "Progressive Insurance Companies." Mitchell filed an amended complaint adding Halcyon as a defendant.
[2] This language is from Section B(2) of the uninsured/underinsured motorists coverage endorsement, which is quoted in full below.
[3] Clark v. Scarpelli (2001), 91 Ohio St.3d 271, 282, quoting King v.Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, syllabus ("`Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured.'").
[4] For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time the parties entered into a contract for insurance controls the contractual rights and responsibility of the parties. Ross v. Farmers Ins. Group ofCos. (1998), 82 Ohio St.3d 281, syllabus. Because Morrison and Motorists entered into the instant policy on February 11, 2002, R.C. 3937.18 as amended by S.B. No. 97, effective October 31, 2001, is the version of R.C. 3937.18 that governs the policy.