[Cite as *Watt v. Westfield Nat. Ins. Co.*, 2021-Ohio-3205.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

WILLIAM R. WATT,                             :

    Plaintiff-Appellant,           :

                                      No. 110263

    v.                                          :

WESTFIELD NATIONAL INSURANCE   :
COMPANY, ET AL.,

                                       :

    Defendant-Appellees.

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 16, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-931138

---

### *Appearances:*

Kisling, Nestico & Redick, L.L.C., and Christopher J. Van
Blargan, *for appellant.*

Fischer, Evans & Robbins, Ltd., and Cari Fusco Evans, *for
appellees.*

LISA B. FORBES, J.:

{¶ 1} William R. Watt ("Watt") appeals from the trial court's journal entry granting summary judgment to Westfield National Insurance Company ("Westfield") in this case alleging underinsured motorist ("UIM") coverage, breach

of contract, and bad faith.  After reviewing the facts of the case and pertinent law, we affirm the lower court's judgment.

## I.    Factual and Procedural History

{¶ 2}    Pertinent to this appeal, Daniel Eidt ("Eidt") was insured by Westfield under a personal auto policy (the "Primary Policy") and an umbrella policy (the "Umbrella Policy") (collectively the "Policies").  Eidt was engaged to be married to Deborah Pinson ("Pinson").  On April 18, 2018, Pinson was killed in a car accident while she was a passenger in Eidt's vehicle.  Watt is the administrator of Pinson's estate.

{¶ 3}    In March 2020, Watt filed this action against Westfield, claiming that Pinson was entitled to benefits because she "was an insured * * * and an intended beneficiary" under the Policies, and the tortfeasor who caused the fatal accident was underinsured.  Westfield filed a counterclaim requesting that the court issue a declaration that Pinson was not entitled to UIM coverage under the Policies.  The court granted summary judgment in favor of Westfield on January 4, 2021, declaring that Pinson was excluded from UIM coverage under the Policies.  It is from this order that Watt appeals.

## II.   Summary Judgment Standard of Review

{¶ 4}    Appellate review of an order granting summary judgment is de novo. *Marusa v. Erie Ins. Co.,* 136 Ohio St.3d 118, 2013-Ohio-1957, 991 N.E.2d 232, ¶ 7. Pursuant to Civ.R. 56(C), the party seeking summary judgment must prove that (1) there is no genuine issue of material fact; (2) they are entitled to judgment as a

matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

{¶ 5} In *Nationwide Mut. Fire Ins. Co. v. Pusser*, 160 Ohio St.3d 203, 2020-Ohio-2778, 155 N.E.3d 839, ¶ 8, the Ohio Supreme Court recently reiterated the standard of review for summary judgment based on an insurance contract:

> This case requires basic contract interpretation. "Contracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974), paragraph one of the syllabus; *see also Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273, 1999-Ohio-162, 714 N.E.2d 898 (1999). Moreover, "ambiguous language in an insurance contract is construed against the insurance company." *Dominish v. Nationwide Ins. Co.*, 129 Ohio St.3d 466, 2011-Ohio-4102, 953 N.E.2d 820, ¶ 7. "We apply the de novo standard of review to a decision granting or denying a motion for summary judgment based on an insurance contract." *Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818, 948 N.E.2d 931, ¶ 12.

{¶ 6} The Ohio Supreme Court has also held, however, that there are limitations to the rule that "an ambiguity in an insurance contract is ordinarily interpreted against the insurer and in favor of the insured." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 13. One such limitation is found in *Cook v. Kozell*, 176 Ohio St. 332, 336, 199 N.E.2d 566 (1964), which states that "the plaintiff is not a party to this contract of insurance and, therefore, is not in a position to urge, as one of the parties, that the contract be construed strictly against the other party."

**{¶ 7}** Basic contract interpretation dictates that "common words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Alexander v. Buckeye Pipeline Co.,* 53 Ohio St.2d 241, 245-246, 374 N.E.2d 146 (1978). On the other hand, when contract language is unclear or ambiguous, courts may consider extrinsic evidence "in an effort to give effect to the parties' intentions." *Shifrin v. Forest City Ents., Inc.,* 64 Ohio St.3d 635, 638, 597 N.E.2d 499 (1992).

## III. Watt's Claims

**{¶ 8}** In his complaint, Watt alleges claims for UIM coverage, breach of contract, and bad faith.

### A. UIM Coverage

**{¶ 9}** Pursuant to R.C. 3937.18(C),

[i]f underinsured motorist coverage is included in a policy of insurance, the underinsured motorist coverage shall provide protection for insureds thereunder for bodily injury, sickness, or disease, including death, suffered by any insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the underinsured motorist coverage.

### B. Breach of Contract

**{¶ 10}** To establish a breach of contract claim, a plaintiff must prove "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Stancik v. Hersch*, 8th Dist. Cuyahoga No. 97501, 2012-Ohio-1955, ¶ 35. Furthermore, "[i]t is undisputed that one seeking to recover

on an insurance policy generally has the burden of proving a loss and demonstrating coverage under the policy." *Inland Rivers Serv. Corp. v. Hartford Fire Ins. Co.,* 66 Ohio St.2d 32, 34, 418 N.E.2d 1381 (1981).

### C. Bad Faith

{¶ 11} In *Motorists Mut. Ins. Co. v. Said*, 63 Ohio St.3d 690, 695, 590 N.E.2d 1228 (1992), the Ohio Supreme Court held that

> a cause of action for the tort of bad faith, based upon an alleged failure of an insurance company to satisfy a claim by its insured may, under certain circumstances, be brought by its insured as a separate action, apart from an insured's action alleging breach of the insurance contract. The insurer's duty of good faith towards its insured is implied by law. This duty may be breached only by an intentional failure by the insurer to perform under its contract with the insured.

## IV. The Westfield Policies

### A. The Primary Policy

{¶ 12} Under the Primary Policy an "insured" is defined as follows:

A.       You or any family member.

B.       Any other person occupying your covered auto who is not a named insured or insured family member for underinsured motorists coverage under another policy. * * *

{¶ 13} Under the Primary Policy "UIM" is defined as follows:

We will pay compensatory damages which an ***insured*** is legally entitled to recover from the owner or operator of an ***underinsured motor vehicle*** because of ***bodily injury***:

A.       Sustained by an ***insured***; and
B.       Caused by an accident.

### B. The Umbrella Policy

{¶ 14} The Umbrella Policy states in pertinent part as follows:

III. EXCLUSIONS

We do not provide coverage for any person:

1. Unless the **underlying insurance** shown in the Declarations affords coverage with respect to such uninsured motor vehicles or underinsured motor vehicles; and

2. Unless such **underlying insurance** is in force at the time of the accident; and

3. For any claim for damages not covered by the **underlying insurance** shown in the Declarations. * * *

{¶ 15} The Umbrella Policy defines "underlying insurance" as

any policy providing the **insured** with primary liability insurance covering one or more of the types of liability listed in the Declarations and at limits no less than the retained policy limits shown for those types of liability listed in the Declarations.

{¶ 16} The declarations page of the Umbrella Policy lists the Primary Policy as the underlying insurance.

## V. The Travelers Policy

{¶ 17} The undisputed evidence presented by the parties established that, at the time of Pinson's death, she was insured under a policy issued by Travelers, which included UIM coverage.[1]

## VI. The Journal Entry

{¶ 18} The trial court's journal entry granting Westfield's summary judgment motion states in pertinent part as follows:

---

[1] Per Westfield's summary judgment motion, Pinson's Travelers policy defines "*uninsured* motor vehicle" to include "what is understood to be *underinsured* motorist coverage* * *." (Emphasis added.) Additionally, Pinson's brief in opposition to summary judgment concedes that "Pinson had underinsured motorist coverage through her underlying Travelers' [sic] Policy."

This court * * * can find no legal justification to interpret the umbrella policy differently than the underlying policy given the circumstances. * * * While the "other insurance" provision contemplates that other [UIM] coverage may be available to Eidt and his insureds, it refers to other such coverage available to Eidt and his family members, not to a passenger insured under another policy. * * * Given this reading of the Westfield policy, the "other insurance" provision does not presume that a passenger who is an insured under another policy will also be entitled to uninsured/underinsured motorists coverage. * * * The court declares that Eidt's insurance policies do not extend coverage to Pinson's estate under the facts of this case.

## VII. Analysis

{¶ 19} We first note that the facts in this case are undisputed, and our review is limited to whether Westfield is entitled to judgment as a matter of law.

{¶ 20} Taking the Primary Policy's definitions into consideration, Pinson must be an "insured" to be entitled to UIM coverage. An insured under the Primary Policy must fall into one of three categories: the named insured; a family member; or "[a]ny other person occupying [the named insured's] covered auto who is not a named insured or insured family member for [UIM] coverage under another policy."

{¶ 21} Applying this to the facts of the case at hand, Pinson is not an insured under the first two categories — she is not the named insured on Eidt's Primary Policy, nor is she a family member of Eidt. It is the third category of this definition that lies at the crux of whether Pinson is an insured under the Primary Policy, which would entitle her to benefits under the Umbrella Policy.

{¶ 22} Westfield argues that this "provision is not ambiguous and provides that if an individual is a named insured on their own policy of insurance that includes [UIM] coverage, * * * they do not qualify under the [Primary Policy] as an

insured.  * * * Pinson does not qualify as an insured under [the Primary Policy] since she was a named insured on her own Travelers policy."

{¶ 23} We find that the case at hand is analogous to *Mitchell v. Motorists Mut. Ins. Co.*, 10th Dist. Franklin No. 04AP-589, 2005-Ohio-3988, ¶ 22, in which the court held the following:

> Here, Motorists utilized its ability to define who is an insured under the policy to exclude from that definition passengers who are insureds under other polices.  Although Mitchell is unhappy with the result, i.e., that he is limited to collecting benefits only under his cousin's policy, no public policy or statute prohibits it or even militates against it.

{¶ 24} Mitchell was a passenger in a car and was injured when a negligent driver collided with the vehicle in which he was riding.  *Id.* at ¶ 2.  Mitchell sued Motorists, who insured the car he was riding in, for UIM coverage because his damages exceeded the amount of money he received in a settlement from the tortfeasor's insurance company.  *Id.* at ¶ 5.  The trial court granted summary judgment to Motorists, agreeing with its argument that "Mitchell was not an insured for the purposes of the underinsured motorists coverage provided for under [the insured's] policy."  *Id.* at ¶ 7.  Motorists' argument "relied upon the provision of its policy that defined an 'insured' as a passenger 'who is not a named insured or an insured family member for uninsured motorists coverage under another policy."  *Id.*

{¶ 25} The provision in the Motorists policy in *Mitchell* and the provision in the Primary Policy in the case at hand are virtually identical.  Under the plain language of the Primary Policy in the case at hand, Pinson is not an insured because, as established by the undisputed evidence, she was a named insured with UIM

coverage under her Travelers policy. Furthermore, because she is not an insured under the Primary Policy, she is not entitled to UIM coverage.

{¶ 26} Turning to the Umbrella Policy, we find that coverage is not provided unless the underlying insurance provides coverage. The underlying insurance in this case is the Primary Policy, and as established in this opinion, Pinson is not entitled to coverage under the Primary Policy. Therefore, she is not entitled to coverage under the Umbrella Policy.

{¶ 27} Westfield, on the other hand, is entitled to judgment as a matter of law, and the court did not err in granting summary judgment in the case at hand. Watt's sole assignment of error is overruled.

{¶ 28} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry out this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

MARY EILEEN KILBANE, P.J., and
EMANUELLA D. GROVES, J., CONCUR