[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as
*Acuity, A Mut. Ins. Co. v. Progressive Specialty Ins. Co.*, Slip Opinion No. 2023-Ohio-3780.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-3780

ACUITY, A MUTUAL INSURANCE COMPANY, APPELLEE, *v.* PROGRESSIVE SPECIALTY INSURANCE COMPANY, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Acuity, A Mut. Ins. Co. v. Progressive Specialty Ins. Co.*, Slip Opinion No. 2023-Ohio-3780.]**

*Contracts—Loss resulting from accident involving vehicle borrowed by owner's friend must be covered by friend's insurer because friend does not qualify as an "insured" under plain language of owner's insurance policy—Court of appeals' judgment reversing trial court's grant of summary judgment in favor of friend's insurer reversed.*

(No. 2022-0863—Submitted April 19, 2023—Decided October 19, 2022.)

APPEAL from the Court of Appeals for Portage County,
No. 2021-P-0001, 2022-Ohio-1816.

_____

**DEWINE, J.**

{¶ 1} Ashton Smith borrowed a friend's car and got into an accident. Smith was insured by Acuity. The car's owner was insured by Progressive Specialty Insurance Company. The question is which insurer is on the hook for the accident?

{¶ 2} Insurance policies are contracts, so the answer comes down to contract interpretation. Under the plain language of the Progressive policy, Smith was not an "insured person" when he was driving his friend's car. But he was covered under the plain language of the Acuity policy. Thus, we conclude that Acuity must provide coverage for the accident in question. The Eleventh District Court of Appeals took a different view, so we reverse its judgment.

## I. Background

### A. A Car Crash and Two Insurance Policies

{¶ 3} Smith drove a car off the road, injuring his three passengers and damaging a utility pole. In insurance lingo, Smith was a "permissive user" of the car—that is, he had been given permission to drive the car by the car's owner.

{¶ 4} Smith was insured through his father's automobile-insurance policy with Acuity, which listed Smith as a driver. The owners of the car Smith was driving insured it through Progressive. Both policies had the same liability limits: $100,000 per person and $300,000 per accident.

{¶ 5} Acuity filed a judgment action, claiming that Progressive should pay for damages resulting from the crash. Acuity asserted that its policy only provided coverage in excess of Progressive's coverage and that because the policy limits of both policies were the same, no excess coverage was available. Progressive countered that because Smith was insured under his father's Acuity policy, Smith wasn't an "insured person" under Progressive's policy for purposes of the accident and, therefore, Progressive wasn't responsible for coverage.

**{¶ 6}** The relevant provision in the Progressive policy is found under the definition of "insured person." The definition excludes any person who drives a car covered by the policy but who is insured by another liability policy:

> 1. "Insured Person" means:
> * * *
> b. any person who is not insured for liability coverage by any other insurance policy * * * with respect to an accident arising out of that person's use of a covered auto with the permission of you, a relative, or a rated resident.

In addition, the Progressive policy contained an "excess insurance" provision, which provided that insurance for a vehicle "other than a covered auto, will be excess over any other collectible insurance."

**{¶ 7}** On the other hand, the Acuity policy defined "insured person" to include "[y]ou or a relative while using a car * * * other than your insured car with a reasonable belief of having permission to do so." The policy also included an excess-insurance clause, which provided:

> *If there is other applicable auto insurance* on a loss covered by this Part, we will pay our proportionate share as our limits of liability bear to the total of all applicable liability limits. But, insurance afforded under this Part for a vehicle you do not own is excess over any other collectible auto liability insurance.

(Emphasis supplied.)

*B. The Proceedings Below*

{¶ 8} Both Progressive and Acuity filed motions for summary judgement. The trial court applied the plain language of the two policies and found Acuity responsible for providing liability coverage. It explained that the excess-insurance provision in Acuity's policy applies only when other applicable auto liability insurance is available. And because Smith does not fall within the definition of "insured person" in Progressive's policy, no "other liability" insurance was available with respect to Smith.

{¶ 9} Acuity appealed to the Eleventh District, which reversed the trial court's decision. 2022-Ohio-1816, ¶ 5. It held that the definition of "insured person" in the Progressive policy was an "escape clause," *id.* at ¶ 39, and that under *State Farm Mut. Auto. Ins. Co. v. Home Indemn. Ins. Co.*, 23 Ohio St.2d 45, 261 N.E.2d 128 (1970), the provision was unenforceable. 2022-Ohio-1816 at ¶ 3. It then reasoned that once the "escape clause [was] negated," there remained competing excess-insurance clauses. *Id.* at ¶ 4. The court held that in such a situation, both insurers were responsible for providing coverage, with each insurer liable in proportion to the amount of insurance provided by its own policy. *Id.*

{¶ 10} We accepted Progressive's appeal, which raises two propositions of law. The first asserts that insurers are permitted to contractually define who is covered under a liability-insurance policy. The second postulates that when a permissive driver is not an insured under the "owner's liability coverage because the permissive user is covered by his or her own liability coverage, then the owners' liability coverage is not triggered for the permissive user." *See* 167 Ohio St.3d 1525, 2022-Ohio-3322, 195 N.E.3d 157.

## II. Analysis

{¶ 11} Insurance policies are contracts. And when we interpret contracts, we must take their language seriously. Indeed, both the United States and the Ohio Constitutions prohibit the enactment of laws "impairing the obligation of

4

contracts." Ohio Constitution, Article II, Section 28; U.S. Constitution, Article I, Section 10. We interpret insurance contracts "with the same rules as other written contracts." *Hybud Equip. v. Sphere Drake Ins. Co. Ltd.*, 64 Ohio St.3d 657, 665, 597 N.E.2d 1096 (1992); *see also Sharonville v. Am. Emps. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 6. That means that for an insurance contract, just like any other contract, "[a] court has an obligation to give plain language its ordinary meaning and to refrain from rewriting the contractual agreement of the parties." *Miller v. Marrocco*, 28 Ohio St.3d 438, 439, 504 N.E.2d 67 (1986).

{¶ 12} So, we start with the plain language of the two policies.

### A. *Under a plain-language reading, Progressive prevails*

{¶ 13} If plain meaning is the standard, this is an easy case. Under the terms of the Progressive policy, Smith is not an "insured person." That policy covers a permissive user of a covered automobile only when the user "is not insured for liability coverage by any other insurance policy." Because Smith is insured under his father's Acuity policy, he does not qualify as an "insured person" under the Progressive policy.

{¶ 14} Smith does qualify as an insured person under the Acuity policy. The policy defines "insured person" to include a relative of the policyholder, such as Smith, who is "using a car * * * other than [his] insured car" with "permission to do so." The "excess insurance" provision in that policy applies only "[i]f there is other applicable auto liability insurance." Because Smith doesn't qualify as an insured driver under the Progressive policy, there is no other applicable liability insurance. Thus, under the plain language of the contracts at issue, Acuity is responsible for providing liability coverage to Smith for the accident.

{¶ 15} Acuity doesn't dispute that under a plain-language reading of both policies, it would be responsible for providing coverage. Instead, it argues that this

5

case is controlled by this court's decision in *State Farm*, 23 Ohio St.2d 45, 26 N.E.2d 128, a view shared by the court of appeals. So, let's turn to that decision.

## B. State Farm *is distinguishable*

{¶ 16} Like the case at bar, *State Farm* involved a permissive user who caused a car accident. *See State Farm* at 45. State Farm insured the permissive user, and its policy included a provision that the court identified as an excess-insurance clause, *id.* at 46. Home Indemnity Insurance Company insured the owner, and its policy included what this court identified as an escape clause. *Id.*

{¶ 17} State Farm's excess-insurance clause provided that " 'the insurance with respect to a temporary substitute automobile * * * shall be excess over other collectible insurance.' " *Id.* Home Indemnity's escape clause provided that coverage was available under the policy " 'only if no other valid and collectible automobile liability insurance, either primary or excess * * * is available to such person.' " *Id.*

{¶ 18} This court interpreted the excess clause to "concede[] no basic primary or primary liability on the part of" State Farm, but only to limit State Farm's liability to the excess over other collectable insurance. *Id* at 47. Thus, the problem as identified by the *State Farm* court was that "if all the provisions of each policy [were] given full effect without reference to the other, neither policy would cover the loss." *Id* at 46. In the court's view, Home Indemnity's escape clause would absolve it of any liability, while State Farm's excess clause would not apply because there was no other insurance for which State Farm's insurance would be in excess.

{¶ 19} The *State Farm* court solved this problem through a creative interpretation of the Home Indemnity escape clause. The court held that it would interpret the provision "*as if it read* that its policy would insure the loss 'but only if either no other valid and collectible primary automobile insurance or no other valid and collectible excess automobile insurance is available to the insured.' "

(Emphasis supplied.) *Id. at* 47-48.[1] By reading the policy in this manner, the court found that because there was no other primary insurance available, the escape clause was "insufficient to prevent liability from attaching to the insurer who designed it." *Id.* at 48.

{¶ 20} Our case is different from *State Farm.* Underpinning the court's holding in *State Farm* was the concern that if the court gave "full effect" to both policies, "neither policy would cover the loss." *Id.* at 46. This was true even though it was "conceded that the driver would be covered under each policy were it not for the 'other insurance' language contained in each." *Id.*

{¶ 21} The policy language in our case is different from the language in *State Farm.* And unlike in *State Farm*, giving effect to the plain terms of the policy coverage does not create the anomalous circumstance in which an insured who could have obtained coverage under either policy (but for the other) has coverage available under neither. To the contrary, applying the straightforward language of the policies at issue leads to a straightforward result: Smith's own insurance company, Acuity, must cover the loss. Thus, whatever the wisdom of the *State Farm* decision, its holding does not control the outcome of the present dispute. *See Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007 Ohio 6948, 880 N.E.2d 420, ¶ 23, quoting *Rocky River v. State Emp. Relations Bd.*, 43 Ohio St.3d 1, 5, 539 N.E.2d 103 (1989) (stare decisis "is limited to circumstances 'where the facts of a subsequent case are substantially the same as a former case' ").

---

1. Of course, this was far from the obvious reading of the provision. *See* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 119 (2012) (when a disjunctive list is negated, "none of the listed things is allowed"). So, " 'not A, B, *or* C' means 'not A, not B, *and* not C.' " (Emphasis sic.) *Id.* Thus, the more natural reading of the escape clause would have been that a permissive driver must prove that he did not have primary liability insurance *and* that he did not have excess liability insurance before being eligible for coverage.

### C. We apply a plain reading of the insurance policies at issue

{¶ 22} This case boils down to a fairly simple question: Do we apply the plain language of the insurance policies, or do we extend the *State Farm* decision to encompass the facts of the present dispute?

{¶ 23} Acuity would like us to read into the *State Farm* case a broad rule that "[i]n a dispute between insurers over allocation of automobile liability coverage, escape language is generally unenforceable." We decline to do so.

{¶ 24} Our duty when interpreting a contract is to give effect to the terms to which the parties have agreed. Where two insurance policies exist, and where under the plain and natural reading of both policies, one policy provides coverage and the other does not, we must honor the parties' agreement. It is not within our province to rewrite contracts to create judicially preferred outcomes.

{¶ 25} Indeed, in other types of automobile-insurance cases, we have not hesitated to apply the plain meaning of policy language by which an insurer limits coverage through its definition of "insured person." In *Holliman v. Allstate Ins. Co. Corp.*, the plaintiffs' decedents were passengers in a car when they were killed in a crash caused by an uninsured motorist. 86 Ohio St.3d 414, 415, 715 N.E.2d 532 (1999). After recovering the policy limit from the car owner's primary uninsured-motorist policy, they sought coverage under the owner's umbrella insurance policy. *Id*. That policy, however, defined "insured persons" to include only the policy holder and "any resident relative." *Id*. at 416. Because the plaintiffs' decedents were friends of the policyholder, not relatives, the insurer denied coverage. *Id*. We upheld this result, explaining that the provision was not in contravention of the uninsured-motorist statute and that therefore, "the question of whether the umbrella policy provided coverage to plaintiffs' decedents must be determined according to the rules that govern the construction of written contracts generally." *Id*. at 417.

**{¶ 26}** Acuity says that *Holliman* is different because it dealt with uninsured-motorist coverage. But we are hard pressed to see why that distinction matters. The take-away from *Holliman* is that absent a statutory prohibition to the contrary, parties are free to reach their own agreement about who is an insured under an insurance policy. The same goes for this case.

**{¶ 27}** Acuity contends that the rule it advocates is "good public policy" and suggests that it reflects "the traditional principle" that "insurance follows the car." We fail to see any public-policy reason that would militate for assigning liability to one insurer over the other in this case, particularly in the face of unambiguous policy language. But even if we did, public policy is not our role.

**{¶ 28}** Insurance is among the most highly regulated areas of the law. *See* R.C. Title 39. The General Assembly has enacted a comprehensive statutory scheme related to the provision of motor-vehicle insurance in Ohio. *See* R.C. Chapter 3937. Insurers are required to file with the Ohio Department of Insurance "every form of a policy" that the insurer "proposes to use." R.C. 3937.03. And the filed coverage forms are subject to comment and rejection by the Superintendent of the Department of Insurance. *See* R.C. 3937.04. Against this backdrop, we will leave the policymaking to the executive and legislative branches.

**{¶ 29}** Where two insurance policies potentially cover the same loss and a plain reading of the language of both policies establishes that one of the policies provides coverage, we will give effect to that plain language. The holding in *State Farm* is limited to the facts that gave rise to that case.

### III. Conclusion

**{¶ 30}** We apply the same rules for the interpretation of insurance contracts as any other contracts. Under the plain language of the policies at issue, Acuity is responsible for providing coverage. We reverse the contrary judgment of the Eleventh District Court of Appeals.

Judgment reversed.

KENNEDY, C.J., and FISCHER, STEWART, and DETERS, JJ., concur.

BRUNNER, J., dissents, with an opinion joined by DONNELLY, J.

_____

**BRUNNER, J., dissenting.**

{¶ 31} This case involves an automobile accident and potential coverage under two insurance policies. We are asked to determine which policy covers the losses when one policy covers the permissive driver and another policy covers the borrowed vehicle. We previously have answered this question in different contexts and in different factual scenarios involving dueling insurance policies. *See State Farm Mut. Auto. Ins. Co. v. Home lndemn. Ins. Co.*, 23 Ohio St.2d 45, 261 N.E.2d 128 (1970); *Buckeye Union Ins. Co. v. State Auto. Mut. Ins. Co.*, 49 Ohio St.2d 213, 361 N.E.2d 1052 (1977). This case presents neither a novel question nor an issue of public or great general interest. *See* Ohio Constitution, Article IV, Section 2(B)(2)(e); S.Ct.Prac.R. 7.08(B)(4)(b). Nor does it involve a substantial constitutional question. *See* Ohio Constitution, Article IV, Section 2(B)(2)(a)(ii); S.Ct.Prac.R. 7.08(B)(4)(a). Rather, all we must do to resolve this case is to apply well-established principles of contract interpretation, *see* majority opinion, ¶ 11, and in the spirit of pure error correction, the majority reaches a conclusion different from the one reached by the Eleventh District Court of Appeals. "Error correction is not a valid reason for this court to accept jurisdiction." *State v. Barnes*, __ Ohio St.3d __, 2022-Ohio-4486, __ N.E.3d __, ¶ 48 (Fischer, J., dissenting).

{¶ 32} The more we engage in error correction, the less time and attention we can devote to issues that can be resolved only by this court. *See* Ohio Constitution, Article IV, Section 2 (establishing the wide-ranging areas of this court's jurisdiction). Because we have the responsibility to supervise the courts of this state, we should focus on preventing errors through judicial education rather than correcting them by exercising our discretionary jurisdiction. *See* Ohio Constitution, Article IV, Section 5(A)(1); Gov.Jud.R. V. We should not have

accepted this appeal; I previously voted not to accept it, 167 Ohio St.3d 1525, 2022-Ohio-3322, 195 N.E.3d 157, and emphasize that vote now in dissenting from the majority opinion.

{¶ 33} Since this court *is* substantively reviewing the case, I point out that the majority's plain-language analysis does not work. The majority explains that Ashton Smith does not satisfy the definition of "insured person" in appellant Progressive Specialty Insurance Company's policy, because he is insured by appellee Acuity, A Mutual Insurance Company. Majority opinion at ¶ 13. But a closer reading of Acuity's policy does not plainly establish that Smith is, in fact, insured under it. This is because Smith was driving a borrowed automobile not covered under the Acuity policy, and pursuant to the "Other Insurance" provision in the policy, coverage in that circumstance is limited to the "excess over any other collectible auto liability insurance." Therefore, both the Progressive and Acuity policies appear to provide only "excess coverage" for the losses caused by Smith's accident. The majority opinion fails to reach the heart of the controversy by failing to consider this distinction.

{¶ 34} A plain-language reading of the dueling policy language at issue calls for applying the *State Farm* and *Buckeye Union* analyses—that is, the application of already established law. This is error correction, void of any novel issue of law. The Eleventh District applied our precedent and made the required, careful analysis of the contract language at issue. Our review is unwarranted and unnecessary. Worse, error-correction analysis that ignores facts that are necessary for a full legal analysis creates bad law.

{¶ 35} We must reserve this court's discretionary appellate jurisdiction for cases that are of public or great general interest in order to best serve the public and appropriately supervise the courts of this state. *See* Ohio Constitution, Article IV, Sections 2(B)(2)(e) and 5(A)(1). Because we do not accomplish this in issuing the majority opinion in this case, I respectfully dissent and suggest that this case should

be dismissed as having been improvidently accepted.

DONNELLY, J., concurs in the foregoing opinion.

_____

Hanna, Campbell & Powell, L.L.P., Kenneth A Calderone, Douglas G. Leak, and John R. Chlysta, for appellee.

Collins, Roche, Utley & Garner, L.L.C., David L. Lester, and David G. Utley, for appellant.

Western Reserve Group and David L. Jarrett, urging reversal for amicus curiae, Western Reserve Group.

_____