[Cite as *State Farm Mut. Auto. Ins., Co. v. Garcia*, 2024-Ohio-2800.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE FARM MUTUAL AUTOMOBILE :
INSURANCE COMPANY,

                                :

    Plaintiff-Appellee,                          No. 112434

                                :

    v.

                                :

JOSE GARCIA, ET AL.,

    Defendants-Appellants.    :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 25, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-965584

---

### *Appearances:*

Collins, Roche, Utley & Garner, LLC, David L. Lester and Richard M. Garner, *for appellee.*

Mark D. Griffin, Cleveland Director of Law, William M. Menzalora, Chief Assistant Director of Law, and Michael J. Pike and Carli R. Young, Assistant Directors of Law, *for appellant.*

LISA B. FORBES, J.:

{¶ 1} This case involves a declaratory judgment action brought by plaintiff-appellee State Farm Mutual Automobile Insurance Co. ("State Farm") against

defendant-appellant Jose Garcia ("Garcia") concerning liability coverage under an automobile insurance policy for a shooting that resulted in the death of Desmond Franklin ("Franklin"). Garcia appeals the trial court's decision granting summary judgment in favor of State Farm and denying his motion for partial summary judgment. Garcia contends that the trial court erred in concluding, as a matter of law, that State Farm has no duty to defend or indemnify Garcia as to claims Franklin's estate filed against him arising out of the incident. For the reasons that follow, we affirm the trial court.

## I. Facts and Procedural History

### A. The Wrongful Death Action

{¶ 2} On April 9, 2020, Franklin died from a gunshot fired by Garcia while Garcia was in the driver's seat of his 2007 Honda Accord. In December 2021, the administrator of Franklin's estate (the "Estate") filed suit in the Cuyahoga County Court of Common Pleas against Garcia, asserting a wrongful death claim, a survivorship claim, and claims for "negligence-reckless conduct," intentional infliction of emotional distress, and "unconstitutional seizure" under 42 U.S.C. 1983 for Garcia's role in the shooting death of Franklin. The case was removed to the United States District Court for the Northern District of Ohio, Eastern Division, Case No. 1:22-CV-00061, where it remains pending (the "wrongful death action").

{¶ 3} The complaint in the wrongful death action alleged that Garcia was a Cleveland police officer who was driving his vehicle to the police station to begin his shift when the incident occurred. The complaint further alleged that Garcia

confronted Franklin and a teenage friend after they allegedly took soda from an open delivery truck and that Garcia then shot at Franklin when their cars were stopped side-by-side at an intersection, "willfully, wantonly, recklessly, negligently, intentionally, and maliciously caus[ing] the wrongful death of Desmond Franklin."

{¶ 4} Garcia filed an answer in which he claimed, as an affirmative defense, that he shot Franklin in self-defense after Franklin pointed a gun at him.

## B. The Insurance Policy

{¶ 5} At the time of the incident, Garcia was a named insured and his 2007 Honda Accord was a covered vehicle under an auto insurance policy issued by State Farm (the "policy"). The policy had liability limits of $100,000 per person/$300,000 per accident.

{¶ 6} With respect to liability coverage, the policy stated in relevant part:

### LIABILITY COVERAGE

\* \* \*

Insuring Agreement

1. **We** will pay damages an **insured** becomes legally liable to pay because of:

    a. **bodily injury** to others; and

    b. damage to property

    caused by an accident that involves a vehicle for which that **insured** is provided Liability Coverage by this policy.

2. **We** have the right to:

    a. investigate, negotiate, and settle any claim or lawsuit;

> > b.  defend an ***insured*** in any claim or lawsuit, with attorneys chosen by ***us***; and
>
> > c.  appeal any award or legal decision
>
> for damages payable under this policy's Liability Coverage.

(Emphasis sic.)[1]

{¶ 7}  The policy defines "insured," in relevant part, as follows:

***Insured*** means:

> 1.  ***you*** and ***resident relatives*** for:
>
> > a.  the ownership, maintenance, or use of:
> >
> > (1) ***your car;***
> >
> > (2) *a* ***newly acquired car***; or
> >
> > (3) a ***trailer***; and
>
> > b.  the maintenance or use of:
> >
> > (1) a ***non-owned car***; or
> >
> > (2) a ***temporary substitute car***[.]

(Emphasis sic.)[2]

{¶ 8}  "Bodily injury" is defined as "bodily injury to a ***person*** and sickness, disease, or death that results from it."  (Emphasis sic.)  "Accident," "involves," and "use" are not defined in the policy.

---

[1] The boldface, italicized terms are defined in the policy.

[2] The policy also contains an exclusion that provides "THERE IS NO COVERAGE FOR AN ***INSURED*** * * * WHO INTENTIONALLY CAUSES ***BODILY INJURY*** OR DAMAGE TO PROPERTY."  (Emphasis sic.)  Because that exclusion is not at issue, i.e., State Farm has not claimed it applies, we do not address it further here.

## C. The Declaratory Judgment Action

{¶ 9} State Farm began defending Garcia in the wrongful death action under a reservation of rights. On June 30, 2022, State Farm filed a complaint for declaratory judgment in the Cuyahoga County Court of Common Pleas, seeking a judgment declaring that it had no duty to defend or indemnify Garcia as to the claims asserted in the wrongful death action.

{¶ 10} On December 16, 2022, the parties filed motions for summary judgment in the declaratory judgment action. State Farm argued that because the shooting did not arise out of the "ownership, maintenance, or use" of a motor vehicle, Garcia was not an "insured" under the policy for purposes of the claims asserted in the wrongful death action and State Farm, therefore, had no duty to defend or indemnify Garcia against those claims. Garcia, in turn, moved for partial summary judgment on State Farm's duty to defend. He argued that, based on his claim of self-defense, the claims asserted against him in the wrongful death action were at least "potentially or arguably" within the scope of the policy's liability coverage, triggering State Farm's duty to defend. He asserted that the issue of State Farm's duty to indemnify was premature and not subject to summary judgment.

{¶ 11} The parties stipulated (1) to the policy State Farm had issued to Garcia, (2) to the complaint in the wrongful death action, (3) that "[t]he [u]nderlying [l]awsuit arises out of an April 9, 2020 incident, in which Desmond Franklin died from a gunshot fired by Garcia while Garcia was in the driver's seat of Garcia's motor vehicle," (4) that "[t]he motor vehicle that Garcia occupied at the time of the incident

is the 2007 Honda Accord listed in the Declarations Page of Garcia's State Farm auto policy," and (5) to the Cuyahoga County Medical Examiner's report setting forth the cause and manner of Franklin's death.[3]

{¶ 12} On January 27, 2023, the trial court granted State Farm's motion for summary judgment and denied Garcia's motion for partial summary judgment, concluding, as a matter of law, that State Farm had no duty, under the policy, to defend or indemnify Garcia against the claims in the wrongful death action.

{¶ 13} Garcia appealed, raising the following sole assignment of error for review:

> The lower court erred when it granted summary judgment in favor of Appellee/Plaintiff's [sic] motion for summary judgment and denied Appellant/Defendant's motion for partial summary judgment on the issue of an insurer's duty to defend under an automobile policy of insurance where Appellant/Defendant Garcia is the named insured.

## II. Law and Analysis

### A. Standard of Review

{¶ 14} We review summary judgment rulings de novo, applying the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105

---

[3] As stated in his report, the medical examiner concluded:

> Based on all information known to me at this time, it is my opinion that DESMOND M. FRANKLIN, a 22-year-old male, died as a result of a GUNSHOT WOUND OF THE HEAD. The circumstances surrounding the death, as determined by the investigative and postmortem findings, indicate that the manner of death is HOMICIDE.

(Emphasis deleted.)

(1996). We accord no deference to the trial court's decision and conduct an independent review of the record to determine whether summary judgment is appropriate.

{¶ 15} Under Civ.R. 56, summary judgment is appropriate when no genuine issue exists as to any material fact and, viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party, entitling the moving party to judgment as a matter of law. *Id.* On a motion for summary judgment, the moving party carries an initial burden of identifying specific facts in the record that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, the nonmoving party has the reciprocal burden to point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. *Id.* at 293. Summary judgment is appropriate if the nonmoving party fails to meet this burden. *Id.*

{¶ 16} In this case, the material facts are not in dispute. The parties stipulated to virtually all of the relevant, material facts. This case is purely a matter of contract interpretation, i.e., whether, under the facts and the terms of the policy, State Farm had a duty to defend and indemnify Garcia as to the claims asserted in the wrongful death action.

## B. An Insurer's Duty to Defend and General Principles of Contract Interpretation

{¶ 17} "An insurer's duty to defend is both broader than and distinct from its duty to indemnify." *Acuity v. Masters Pharm., Inc.*, 2022-Ohio-3092, ¶ 12, citing *Ohio Govt. Risk Mgt. Plan v. Harrison*, 2007-Ohio-4948, ¶ 19. When determining whether an insurer has a duty to defend, the court must "look to the scope of the allegations of the underlying complaint filed against the insured" and compare it with the policy's coverage. *Masters Pharm.* at ¶ 12. "'If the allegations state a claim that potentially or arguably falls within the liability insurance coverage, then the insurer must defend the insured in the action.'" *Id.*, quoting *Ward v. United Foundries*, Inc., 2011-Ohio-3176, ¶ 19. An insurer, however, has no duty to defend an action "when all the claims are clearly and indisputably outside the policy coverage." *Masters Pharm.* at ¶ 12.

{¶ 18} The interpretation of a contract is a question of law, and insurance policies are construed in accordance with the same rules as other written contracts. *Acuity v. Progressive Specialty Ins. Co.*, 2023-Ohio-3780, ¶ 11, 30 ("Insurance policies are contracts. And when we interpret contracts, we must take their language seriously."). When confronted with an issue of contractual interpretation, the role of the court is to "give effect to the intent of the parties to the agreement." *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 11, citing *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273 (1999). We examine the insurance policy as a whole and presume that the intent of the parties is reflected in the

language used in the policy. *Galatis* at ¶ 11, citing *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus.

{¶ 19} When the language of an insurance policy is clear and unambiguous, we look no further than the writing itself to determine the parties' intent. *Galatis* at ¶ 11. Like any other contract, its terms are given their plain and ordinary meaning unless another meaning is clearly apparent from the contents of the policy. *Id.*; *see also Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 167-168 (1982) ("[W]ords and phrases used in an insurance policy must be given their natural and commonly accepted meaning, where they in fact possess such meaning, to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined.").

{¶ 20} Because the insurer customarily drafts the insurance contract, any ambiguity in an insurance contract is generally construed against the insurer and in favor of the insured. *Galatis* at ¶ 13 ("[W]here the written contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party."); *Sharonville v. Am. Emps. Ins. Co.*, 2006-Ohio-2180, ¶ 6 ("If provisions are susceptible of more than one interpretation, they 'will be construed strictly against the insurer and liberally in favor of the insured.'"), quoting *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208 (1988), syllabus. However, there are limits to this rule. "'[A] court cannot create ambiguity in a contract where there is none.'" *Sauer v. Crews*, 2014-Ohio-3655, ¶ 12, quoting *Lager v. Miller-Gonzalez*, 2008-Ohio-4838, ¶ 16. A

term is not ambiguous simply because it is not defined in the policy. *State ex rel. Petro v. R.J. Reynolds Tobacco Co.*, 2004-Ohio-7102, ¶ 23; *Sarrough v. Budzar*, 2015-Ohio-3674, ¶ 21 (8th Dist.).

### C. The Parties' Arguments

{¶ 21} As it relates to this appeal, the policy provides liability coverage for "damages an ***insured*** becomes legally liable to pay because of . . . ***bodily injury*** to others . . . caused by an accident that involves a vehicle for which that ***insured*** is provided Liability Coverage by this policy." (Emphasis sic.)

{¶ 22} Garcia argues that the policy's liability coverage extends to the claims asserted against him in the wrongful death action because (1) "there is no dispute that the underlying [c]omplaint alleges 'bodily injury'" to Franklin, (2) an act in self-defense qualifies as an "accident" under the policy, and (3) given that he was in the driver's seat of his 2007 Honda Accord when he fired the shot that killed Franklin, the shooting "involved a vehicle for which [Garcia] was provided Liability Coverage under the policy."

{¶ 23} State Farm responds that because Garcia is an "insured" under the policy only "[f]or . . . the ownership, maintenance, or use" of his vehicle and Franklin's shooting death did not arise out of the ownership, maintenance, or use of his vehicle, the policy does not cover the claims asserted against Garcia in the wrongful death action.

{¶ 24} We need not resolve the issue of whether an act in self-defense qualifies as an "accident" under the policy or whether the shooting "involved a

vehicle" because Garcia was in the driver's seat of his 2007 Honda Accord at the time he shot and killed Franklin. Even if "accident," as used in Garcia's policy, could be construed to include intentional conduct committed in self-defense and even if the shooting were deemed to have "involved a vehicle," the claims asserted in the wrongful death action would still not meet the requirements for liability coverage under the policy.

### D. Liability Coverage under Garcia's Auto Insurance Policy

{¶ 25} In determining whether liability coverage exists for Franklin's death, we must first consider the extent to which Garcia is an insured under the policy. For purposes of liability coverage, the policy defines "insured," in relevant part, as "**you** and **resident relatives** for . . . the ownership, maintenance, or use of . . . **your car**." "You" and "your" are defined, in relevant part, as "the named insured or named insureds shown on the Declarations Page," i.e., Garcia. "Your car" is defined, in relevant part, as "the vehicle shown under 'YOUR CAR' on the Declarations Page," i.e., Garcia's 2007 Honda Accord.

{¶ 26} Garcia argues that we should ignore the policy's definition of "insured" because (1) it "is not in the Insuring Agreement," (2) "the Insuring Agreement, not the Definitions section, sets forth the available coverage," and (3) a "Definitions section" cannot "remove coverage granted by the Insuring Agreement" or be "covert[ed] . . . into an Insuring Agreement." Alternatively, he argues that the policy is ambiguous as to whether the phrase "ownership, maintenance, or use" — as used in the definition of "insured" — modifies only "resident relatives" or "you"

and "resident relatives" and that this ambiguity should be construed against State Farm. Garcia maintains that "the plain language of the Insuring Agreement results in coverage, because bodily injury was caused by an accident involving Garcia's scheduled auto for which he is provided automobile liability coverage by the Policy."

{¶ 27} State Farm asserts that the policy language is unambiguous and argues that because Franklin's death was caused by Garcia firing a handgun and did not "arise out of" Garcia's "ownership, maintenance, or use" of his vehicle, Garcia was not an "insured" under the policy with respect to the claims asserted against him in the wrongful death action.

{¶ 28} "[I]nsured," as used in the insuring agreement, is in boldface, italicized type indicating that it is a defined term. When interpreting an insurance policy, as with any other contract, we must give effect to all language used, including defined terms. *See, e.g., Acuity,* 2023-Ohio-3780, at ¶ 25-26 (noting that the court has "not hesitated to apply the plain meaning of policy language by which an insurer limits coverage through its definition of 'insured person'" and that "absent a statutory prohibition to the contrary, parties are free to reach their own agreement about who is an insured under an insurance policy"), citing *In Holliman v. Allstate Ins. Co. Corp.*, 86 Ohio St.3d 414, 416-417 (1999); *Sherwin-Williams Co. v. Travelers Cas. & Surety Co.*, 2003-Ohio-6039, ¶ 20 (8th Dist.) ("[C]ourts must read insurance policies as a whole and give effect to all of the policy's provisions rather than interpreting particular sections in isolation."). Thus, we cannot ignore the

definition of "insured" in determining the scope of coverage under the insuring agreement.

{¶ 29} "[F]or . . . the ownership, maintenance, or use of . . . *your* **car**" has the same meaning and import whether it appears directly in the insuring agreement or in the definition of "insured" as used in, and incorporated by reference into, the insuring agreement.[4] Further, it is clear from a reading of the definition of "insured" in its entirety that "the ownership, maintenance, or use of . . . **your car**" modifies both "you" and "resident relatives"; there is no ambiguity. "For" is "a function word" used "to indicate purpose," "an intended goal," or "suitability or fitness," or "the object or recipient of a perception, desire, or activity"; it means "as being or constituting" or "with respect to." *Merriam-Webster Online*, https://www.merriam-webster.com/dictionary/for (accessed July 18, 2024) [https://perma.cc/N7K7-JHYM]. Under the terms of the policy, Garcia was an insured not for any and all purposes but rather, as relevant to the issues here, only "for" the "ownership, maintenance, or use" of his vehicle.

**1. Policies Providing Coverage for Accidents or Injuries "Arising out of" or "Resulting From" Ownership, Maintenance or Use of a Vehicle**

{¶ 30} In support of its reading of the policy, State Farm cites numerous cases, including three Ohio Supreme Court cases, in which Ohio courts have

---

[4] Given that "insured," as defined in the liability coverage section of the policy, contains five enumerated sections (some of which also contain subparts) referencing other defined terms, it is entirely reasonable that State Farm used "insured" as a defined term rather than incorporating the multiple definitions of that term directly into the insuring agreement.

interpreted policy provisions providing coverage for accidents or injuries "*arising out of* the ownership, maintenance or use" of a vehicle or "*resulting from* the ownership, maintenance or use" of a vehicle. In these cases, courts have held that injuries resulting from shootings and other assaults fortuitously occurring in, or facilitated by, motor vehicles are not covered under such policy provisions.

{¶ 31} In *Kish v. Central Nat. Ins. Group*, 67 Ohio St.2d 41 (1981), the insured's car was rear-ended when stopped at a traffic light. When the insured got out of his car to speak with the driver of the other vehicle, the driver of the other vehicle shot and killed the insured. *Id*. at 42. The insured's estate sought to recover damages under a policy that provided uninsured motorist coverage for "bodily injury damages that you or your legal representative are legally entitled to recover from the owner or driver of an uninsured motor vehicle" that "result from an accident arising out of the ownership, maintenance, or use of the uninsured vehicle." (Emphasis deleted.) *Id*. at 49. In determining whether recovery should be allowed under that provision, the Ohio Supreme Court rejected a "but for" analysis and held that the "relevant inquiry" is "whether the chain of events resulting in the accident was unbroken by the intervention of any event unrelated to the use of the vehicle." *Id*. at 50. The court distinguished the case from cases involving "intentional acts directed at insureds in which the injury causing instrumentality is the vehicle itself" and held that there was no coverage under the terms of the policy because "the injuries sustained by [the insured], although accidental as to him, did not arise 'out

of the ownership, maintenance, or use of the uninsured vehicle.'" *Id*. at 51-52. The court further explained:

> The application of this standard to the instant facts leads us to conclude that the intentional, criminal act of the murderer was an intervening cause of injury unrelated to the use of the vehicle. As the court below stated, "the death resulted from an act disassociated from and independent of the use of the vehicle as such."

*Id*. at 50.

{¶ 32} In *Howell v. Richardson*, 45 Ohio St.3d 365 (1989), the plaintiff was shot while he was an occupant in a vehicle that was fired upon by the driver of another vehicle. *Id*. at 365-366. The plaintiff sought recovery for his injuries under the shooter's auto insurance policy, which provided liability coverage for "bodily injury to others . . . caused by accident resulting from the ownership, maintenance or use of [the insured's] car." *Id*. at 366, 368. Discussing its holding in *Kish*, the court noted that in determining whether coverage exists, the focus is on the instrumentality causing the injury, pointing out that the result in *Kish* would have been different if the death had resulted from intentional ramming of the decedent's vehicle by the tortfeasor's vehicle. *Id*. at 368-369. The court ruled that the trial court had properly entered a directed verdict in favor of the insurance company, holding: "[I]t is our conclusion that bodily injury to an insured resulting from the discharge of a firearm by a tortfeasor is not encompassed within the terms of a policy of insurance which limits coverage to injuries 'caused by accident resulting from the ownership, maintenance or use of' an automobile." *Id*. at 369.

{¶ 33} In *Lattanzi v. Travelers Ins. Co.*, 72 Ohio St.3d 350 (1995), the plaintiff insured was involved in a collision with an uninsured motorist. *Id.* at 351. The uninsured driver then forced his way into the insured's vehicle, carjacked the insured, and drove her to a house, where he raped her. *Id.* The insured did not sustain any injuries from the collision or while she was in her vehicle but sustained bodily injury and psychological injury as a result of the rape. *Id.* at 351-352. The insured sought coverage for her injuries under her uninsured motorist coverage, which provided coverage for "damages that the insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury suffered by the insured and caused by accident" that "arise out of the ownership, maintenance or use of the uninsured motor vehicle." (Emphasis deleted.) *Id.* at 351.

{¶ 34} Applying *Kish*, 67 Ohio St.2d at 41, and *Howell*, the court observed that, in determining whether coverage exists, "it is how [the tortfeasor] causes the injury that is important" and whether the injury "was achieved through the use of the automobile as an instrumentality." *Id.* at 352-353. The court explained:

> That the assailant intended to harm [the insured] and that he intended to use her automobile to take her to a place where he could harm her is not disputed, nor is it relevant. While the assailant may not have been able to achieve his nefarious purpose without the use of [the insured's] car, a "but for" analysis is inappropriate. . . . At the time the assailant removed [the insured] from her automobile, she had not yet suffered an injury. Any injury incurred by [the insured] after she and her abductor left the car was not achieved through use of the automobile as an instrumentality. Once leaving the automobile, the assailant's own brutal, criminal conduct became the only relevant instrument of injury.
>
> Therefore, the [insured's] injuries are not covered under the . . . policy. Uninsured motorist provisions compensate for injuries caused by

motor vehicles; they typically do not compensate for, or protect from, the evil that men do.

*Id.* at 353,

{¶ 35} Other Ohio courts have reached similar conclusions. *See, e.g., McGuire v. Motorists Mut. Ins. Co.*, 2021-Ohio-3945, ¶ 2, 14 (2d Dist.) (injuries of vehicle passenger, who was caught in the cross-fire between the occupants of two other cars and struck in the head by a stray bullet, were not covered under uninsured motorist coverage because they did not arise out of the "ownership, maintenance, or use" of an uninsured motor vehicle as a matter of law but "arose out of the use of a firearm"); *Westfield Ins. Co. v. Cahill*, 76 Ohio App.3d 410 (3d Dist. 1991) (following *Howell*, 45 Ohio St.3d at 365, and concluding that insured was not entitled to coverage under uninsured motorist provision for injuries he sustained when his girlfriend's estranged husband pursued insured in his car in a high-speed chase, firing several shots at him and striking him twice); *Arrowood v. Lemieux*, 2002-Ohio-6336, ¶ 2, 13, 15 (8th Dist.) (affirming summary judgment in favor of insurer where plaintiff sustained injuries when tortfeasor shot her from his parked car, reasoning that plaintiff's injuries had nothing to do with the "operation, maintenance or use" of the uninsured vehicle; "[r]ather, her injuries were caused by the discharge of a firearm"); *Farmers Ins. of Columbus, Inc. v. Sotak*, 1994 Ohio App. LEXIS 3242 (10th Dist. July 19, 1994) (no coverage for injuries to a passenger in insured's vehicle who was shot and killed by an occupant in a vehicle following insured's vehicle because the "gun used to shoot decedent" and not "[t]he vehicle

itself" was "the instrumentality of harm"); *cf. Estate of Nord v. Motorists Mut. Ins. Co.,* 2005-Ohio-2165, ¶ 13-14 ("[A]n uninsured-motorist provision, which limits coverage to damages that 'arise out of the ownership, maintenance or use of the uninsured motor vehicle,' does not cover damages caused by an event unrelated to the ownership, maintenance, or use of an uninsured motor vehicle. . . . An accident . . . does not arise out of the ownership, maintenance, or use of an uninsured motor vehicle merely because it fortuitously occurs within an uninsured motor vehicle.").[5]

{¶ 36} The message of these cases is clear. For an accident or injury "to arise out of" or "result from" the "use" of a vehicle, the vehicle itself must be the accident-causing or injury-causing instrumentality. Here the policy language is different. But the same reasoning applies.

---

[5] We are unpersuaded by the cases Garcia cites in which courts reached a different outcome. The cases Garcia cites are factually dissimilar, do not apply Ohio law, and/or pre-date *Howell. See, e.g., Shouman v. Nationwide Ins. Co.,* 42 Ohio App.3d 159, 159-160 (8th Dist. 1988) (finding a question of fact existed as to whether appellants' injuries were causally related to the ownership, maintenance, or use of uninsured motor vehicle where appellants were injured when armed robbers in an unidentified vehicle intercepted the car the appellants were driving, a chase ensued, and, during the course of the chase, appellants' automobile was rammed, forced off the road, and one of the appellants was shot); *Nationwide Ins. Co. v. Auto-Owners Mut. Ins. Co.,* 37 Ohio App.3d 199 (10th Dist. 1987) (finding "a sufficient causal relationship existed" for liability coverage for injuries resulting from accidental discharge of a shotgun where insured's vehicle was being used to transport men and their weapons on a hunting trip, it was necessary, as part of this use, that the guns be placed in the truck and the ammunition removed for that purpose, and the insured was complying with the requirements of an Ohio statute when he was ejecting the shells from the shotgun); *Progressive Cas. Ins. Co. v. K.S.,* 731 F.Supp.2d 829, 831-836 (S.D.Ind. 2010) (concluding that vehicle was "in use" for purposes of auto insurance policy when passenger "mooned" the occupants of another vehicle while vehicle was transporting him from one location to another — which caused the other vehicle to lose control); *State Farm Mut. Auto. Ins. Co. v. Davis,* 937 F.2d 1415 (9th Cir. 1991) (applying California law); *see also Arrowood* at ¶ 14 ("We believe that the holding in *Howell* precludes our adopting the reasoning of the *Shouman* case."), citing *Cahill* at 412.

### 2. Coverage under Garcia's Policy

{¶ 37} Although Garcia's auto insurance policy does not require that an accident or injury *arise out of* the ownership, maintenance or use of a vehicle or *result from* the ownership, maintenance or use of a vehicle for liability coverage, the policy includes other causal language that clearly links the damages for which coverage is provided under the policy to the ownership, maintenance, or use of the vehicle as a vehicle. Under the policy, State Farm agrees to pay damages an insured becomes legally liable to pay "because of" bodily injury to others "caused by" an accident that "involves a vehicle" "for which [the] **insured** is provided Liability Coverage by [the] policy."[6] Garcia is not an insured under the policy for any and all purposes. He is an insured under the policy "for . . . the ownership, maintenance, or use" of his vehicle. As such, the reasoning applied in the *Kish/Howell* line of cases

---

[6] Citing *State Farm Mut. Auto. Ins. Co. v. Schalk*, 2016-Ohio-732 (2d Dist.), Garcia argues that the policy language "caused by an accident that involves a vehicle for which that **insured** is provided Liability Coverage by this policy" applies "only to the property damage portion of the policy and not personal injury." Although *Schalk* purportedly involved an interpretation of the same policy form at issue here, the *Schalk* Court concluded that the phrase "caused by an accident that involves a vehicle for which that **insured** is provided Liability Coverage by this policy" modified only "damage to property" and not also "**bodily injury** to others." *Id*. at ¶ 14-15. We disagree.

The issue addressed by the court in *Schalk* was whether the insured had intended to cause bodily injury when he intentionally drove his truck into a bar. *Id*. at ¶ 16-44. The Second District affirmed the trial court's granting of summary judgment in favor of the insurance company on any claims for property damage arising from the incident but held that, under the facts of that case, including the insured's testimony that he thought he was "taking a path that would not hit anybody," a genuine issue of material fact existed as to whether the insured intended to cause injury. *Id*. at ¶ 38, 44, 46. Unlike in this case, where the instrumentality of the harm was the insured's gun, the instrumentality of the harm in *Schalk* was the insured's vehicle.

applies with equal force here: Liability coverage does not exist under the policy where the vehicle was not the instrumentality of the harm.

{¶ 38} It was not Garcia's "ownership, maintenance, or use" of his vehicle that led to the "bodily injury" or "accident" in this case. Franklin's death resulted from "an act disassociated from and independent of the use of the vehicle as such." (Citation omitted.) *Kish*, 67 Ohio St.2d at 50. The instrumentality that caused harm to Franklin was Garcia's gun — not Garcia's vehicle. Likewise, the conduct that caused harm to Franklin was the act of Garcia shooting Franklin with his gun — not Garcia's ownership, maintenance, or use of his vehicle.

{¶ 39} An insured's firing a gun out of the window of his vehicle at an occupant in another vehicle while the vehicles are stopped at an intersection does not logically follow from the use of a vehicle for its purpose of transportation. We find that, based on the plain terms of the policy at issue, the vehicle must be more than the mere situs of the injury-causing event.

{¶ 40} Following a thorough review of the record, considering the relevant policy language in its entirety, we conclude that the claims asserted against Garcia in the wrongful death action are "clearly and indisputably outside the policy coverage." *Masters Pharm.*, 2022-Ohio-3092, at ¶ 12. As such, State Farm owes no duty to defend Garcia in the wrongful death action. Because State Farm has no duty to defend Garcia and because the duty to defend is broader than the duty to indemnify, State Farm likewise does not have a duty to indemnify Garcia for the claims asserted in the wrongful death action. The trial court did not err in granting

State Farm's motion for summary judgment and denying Garcia's motion for partial summary judgment.

{¶ 41} Garcia's assignment of error is overruled.

{¶ 42} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
ANITA LASTER MAYS, J., CONCUR